# EXHIBIT 1

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ORIGINAL FILED

APR 01 2008

LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
J.P. ELIOPULOS ENTERPRISES, INC., a California corporation,
ANDREW J. ELIOPULOS, an individual and GEORGIA ELIOPULOS,
an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
INDYMAC BANK, F.S.B., a Federally Chartered Savings Bank

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles Superior Court - Northeast District
300 East Walnut Street
Pasadena, CA 91101

CASE NUMBER:
*(Número del Caso):* GC040588

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jeffery D. Hermann, Orrick, Herrington & Sutcliffe LLP, 777 S. Figueroa Street, Suite 3200
Los Angeles, CA 90017, (213) 629-2020

DATE: APR 01 2008                    JOHN A. CLARKE          Clerk, by _____ , Deputy
*(Fecha)*                                              *(Secretario)*    MICHAEL CAMPAGNA            *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

Page ___6___
Exhibit ___1___



1

KENT B. GOSS (State Bar No. 131499)
2   JEFFERY D. HERMANN (State Bar No. 90445)
ORRICK, HERRINGTON & SUTCLIFFE LLP
3   777 South Figueroa Street
Los Angeles, California 90017
4   Telephone:    (213) 629-2020
Facsimile:    (213) 612-2499
5   kgoss@orrick.com
jhermann@orrick.com
6
Attorneys for Plaintiff
7   INDYMAC BANK, F.S.B., a Federally Chartered Savings Bank

ORIGINAL FILED

APR 1 1 2008

LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT

8

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF LOS ANGELES

11                       NORTHEAST DISTRICT

12

13   INDYMAC BANK, F.S.B., a Federally      Case No.    GC040588
Chartered Savings Bank;
14                                           VERIFIED COMPLAINT FOR DAMAGES
Plaintiff,            FOR BREACH OF GUARANTIES
15
v.
16   J. P. ELIOPULOS ENTERPRISES, INC.,
a California corporation, ANDREW J.
17   ELIOPULOS, an individual and
GEORGIA ELIOPULOS, an individual;
18
Defendants.
19

20

21

22

23

24

25

26

27                                           Page ___7___
Exhibit ___1___
28

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Plaintiff Indymac Bank, F.S.B., a Federally Chartered Savings Bank, alleges as follows:

## GENERAL ALLEGATIONS

### Nature of the Action

1.      This action is for damages for breach of two guaranties.  Defendants J. P. Eliopulos Enterprises, Inc., a California corporation, Andrew J. Eliopulos, an individual and Georgia Eliopulos, an individual ("**Defendants**") are guarantors of the indebtedness of Joshua Ranch Development, Inc., a California corporation ("**Borrower**") to Lender.  Borrower is not made a party to this action.

2.      Borrower is indebted to IndyMac Bank, F.S.B. (hereinafter, "**Plaintiff**" or "**Lender**") in connection with that certain loan in the original committed principal amount of $36,571,000 (the "**Construction Loan**") made by Lender to Borrower on or about December 6, 2005, for the purpose of the acquisition of approximately 793.62 acres of developable land situated within the Palmdale area of the County of Los Angeles, California, which constitutes a portion of what is commonly referred to as the Joshua Ranch development (the "**Joshua Ranch Project**") and the development of the Project into approximately 183 single family home lots (since increased to approximately 202 single family home lots) and other improvements.  Borrower is further indebted to Lender in connection with that certain loan in the original committed principal amount of $14,533,000 (the "**Construction Loan**" and together with the Construction Loan, the "**Loans**") made by Lender to Borrower on or about January 2, 2007, for the purpose of the construction of twenty residential housing units, three model units and certain other improvements at the Joshua Ranch Project.

3.      Borrower has defaulted on its obligations to Lender and Lender is proceeding to foreclose on its security interests in the Project and other personal property pledged as collateral by Borrower to Lender in connection with the Loans.  Defendants delivered to Lender their written guaranties of the obligations of Borrower to Lender and have breached their obligations to Lender by failing to repay the indebtedness that Borrower owes to Lender pursuant to the terms of such written guaranties.

Page ___8___
Exhibit ___I___

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

## Venue

4.     Venue is proper in this judicial district because this is an action on a contract that was entered into and made in Pasadena, California, was to be performed in Pasadena, and was breached in Pasadena, California (CCP §§ 395 (a), 395.5).

## Parties

5.     Lender is a federally chartered savings bank, with its principal place of business in Pasadena, California.

6.     Defendant  J. P. Eliopulos Enterprises, Inc. is a California corporation with its principal place of business in the City of Lancaster, County of Los Angeles, California.

7.     Defendant Andrew J. Eliopulos is a resident of the City of Lancaster, County of Los Angeles, California.

8.     Defendant Georgia Eliopulos is a resident of the City of Lancaster, County of Los Angeles, California.

## The Building Loan Agreement, Promissory Note and Deed of Trust

## For the Acquisition and Development Loan

7.     Borrower and Lender are parties to that certain Building Loan Agreement (Land Development), dated as of December 6, 2005, as amended, restated, supplemented, or otherwise modified from time to time (the "**A&D Building Loan Agreement**"), providing, among other things, that Lender would make the Acquisition and Development Loan to Borrower on the terms set forth therein. The A&D Building Loan Agreement was executed by Borrower and delivered to Lender at its Pasadena office, where Lender then executed the same.

8.     Borrower and Lender are also parties to that certain Promissory Note in the principal amount of $36,571,000 dated as of December 6, 2005, made by Borrower in favor of Lender (the "**A&D Promissory Note**"), a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference as if set forth in full.  The Promissory Note was received by Lender in its office in Pasadena, California, states that it was made in Pasadena, California, and states that

OHS West:260404578.3
14743-48 JDH                          -2-

Page ___9___

Exhibit ___1___

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

1   Borrower promises to make payments to Lender "at the Lender's office located at 155 North Lake

2   Avenue, LK-11-19, Pasadena, California 91101".

3           9.    Borrower and Lender are also parties to that certain Construction Deed of Trust

4   With Assignment of Rents, Security Agreement and Fixture Filing dated as of December 6, 2005, by

5   and among Borrower as trustor, Lender as beneficiary and Lawyers Title Company as trustee, and

6   recorded in the official records of the Recorder's Office of Los Angeles County, California on December

7   29, 2005, as document 05 3210582 (the "**A&D Deed of Trust**") encumbering the Joshua Ranch Project.

8   The A&D Deed of Trust was executed by Borrower and delivered to Lender at its Pasadena office,

9   where Lender then executed the same.

10   <u>**The Guaranty for the Acquisition and Development Loan**</u>

11           10.    In connection with the Acquisition and Development Loan, and pursuant to the

12   closing requirements for the Loan set forth in section A of Exhibit C to the A&D Building Loan

13   Agreement, Defendants delivered to Lender, at its offices in Pasadena, that certain General Guaranty

14   (Real Estate Secured Loan) dated as of December 6, 2005 (the "**A&D Guaranty**"), made by

15   Defendants, as guarantors, in favor of Lender.   The A&D Guaranty provides, among other things, that

16   each Defendant:

17       "absolutely and unconditionally guarantees the punctual and complete payment and

18       performance when due (whether at the stated maturity, by acceleration or otherwise) of

19       the following (the "<u>Guarantied Obligations</u>"): (a) all present and future indebtedness

20       evidenced by the Note dated the date of this Guaranty in the face principal amount of

21       $36,571,000.00 executed by the Borrower to the order of the Lender, including principal,

22       interest and all other amounts payable under the terms of the Note; . . . "

23   Therefore, by the A&D Guaranty, Defendants guaranteed the obligations of Borrower to make

24   payments to Lender on the A&D Promissory Note at Lender's office in Pasadena, California.  A true

25   and correct copy of the A&D Guaranty is attached hereto as Exhibit "B" and incorporated herein by

26   reference as if set forth in full.

27   Page   10

28   Exhibit   1

11.    On various occasions, the parties have agreed to certain amendments to and revisions of the A&D Building Loan Agreement and related documents and agreements, and on each such occasion, the Defendants agreed to such amendment or revision and reaffirmed their continuing liability under the A&D Guaranty.

## The Building Loan Agreement, Promissory Note and Deed of
## Trust For the Construction Loan

12.    Borrower and Lender are parties to that certain Building Loan Agreement (Land Development), dated as of January 2, 2007, as amended, restated, supplemented, or otherwise modified from time to time (the "**Construction Building Loan Agreement**"), providing, among other things, that Lender would make the Construction Loan to Borrower on the terms set forth therein. The Construction Building Loan Agreement was executed by Borrower and delivered to Lender at its Pasadena office, where Lender then executed the same.

13.    Borrower and Lender are also parties to that certain Promissory Note in the principal amount of $14,533,000 dated as of January 2, 2007, made by Borrower in favor of Lender (the "**Construction Promissory Note**"), a true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein by this reference as if set forth in full. The Promissory Note was received by Lender in its office in Pasadena, California, states that it was made in Pasadena, California, and states that Borrower promises to make payments to Lender "at the Lender's office located at 155 North Lake Avenue, LK-11-19, Pasadena, California 91101".

14.    Borrower and Lender are also parties to that certain Construction Deed of Trust With Assignment of Rents, Security Agreement and Fixture Filing dated as of January 2, 2007, by and among Borrower as trustor, Lender as beneficiary and Fidelity National Title Company as trustee, and recorded with the county Recorder for Los Angeles, California on February 7, 2007, as document 20070266110 (the "**Construction Deed of Trust**") encumbering a portion of the Joshua Ranch Project. The Construction Deed of Trust was executed by Borrower and delivered to Lender at its Pasadena office, where Lender then executed the same.

## The Guaranty for the Construction Loan

15.    In connection with the Construction Loan, and pursuant to the closing requirements for the Loan set forth in section A of Exhibit C to the Construction Building Loan Agreement, Defendants delivered to Lender, at its offices in Pasadena, that certain General Guaranty (Real Estate Secured Loan) dated as of January 2, 2007 (the "**Construction Guaranty**"), made by Defendants, as guarantors, in favor of Lender.   The Construction Guaranty provides, among other things, that each Defendant:

"absolutely and unconditionally guarantees the punctual and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the following (the "Guarantied Obligations"): (a) all present and future indebtedness evidenced by the Note dated the date of this Guaranty in the face principal amount of $14,533,000.00 executed by the Borrower to the order of the Lender, including principal, interest and all other amounts payable under the terms of the Note; . . . "

Therefore, by the Construction Guaranty, Defendants guaranteed the obligations of Borrower to make payments to Lender on the Construction Promissory Note at Lender's office in Pasadena, California.   A true and correct copy of the Construction Guaranty is attached hereto as Exhibit "D" and incorporated herein by reference as if set forth in full.

16.    On various occasions, the parties have agreed to certain amendments to and revisions of the Construction Building Loan Agreement and related documents and agreements, and on each such occasion, the Defendants agreed to such amendment or revision and reaffirmed their continuing liability under the Construction Guaranty.

## Borrower's and Guarantors' Default

17.    By correspondence dated January 10, 2008, from counsel to Lender, Lender provided the Borrower and the Defendants with formal notice of the occurrence of certain defaults and Events of Default under the A&D Building Loan Agreement and the Construction Building Loan Agreement and provided Borrower with a period of 30 days to cure certain of such defaults (the

Page ___12___

Exhibit ___1___

1  **"Default Letter"**).  A true and correct copy of the Default Letter is attached hereto as Exhibit "E" and

2  incorporated herein by reference as if set forth in full.

3        18.  By correspondence from counsel to Lender dated February 26, 2008, Lender

4  provided the Borrower and the Defendants with formal notice of the failure of the Borrower to cure the

5  defaults identified in the prior correspondence, Lender accelerated the maturity of the Loans with the

6  result that all amounts owing under the A&D Promissory Note and the Construction Promissory Note

7  were then immediately due and payable, and Lender made demand upon both Borrower and Defendants

8  to make payment to Lender of all amounts owing under the Loans (the "**Acceleration and Demand**

9  **Letter**").  A true and correct copy of the Acceleration and Demand Letter is attached hereto as Exhibit

10  "F" and incorporated herein by reference as if set forth in full.

11        19.  Lender has caused two Notices of Default (the "**Notices of Default**") to be

12  recorded against the Joshua Ranch Project in the official records of the County of Los Angeles,

13  California, and caused the same to subsequently be mailed to Borrower and Defendants (as well as other

14  parties entitled to notice under relevant law), thereby commencing a non-judicial foreclosure of the real

15  property collateral for the A&D Deed of Trust and the Construction Deed of Trust.  True and correct

16  copies of the unrecorded Notices of Default are attached hereto as Exhibits "G" and "H" and

17  incorporated herein by reference as if set forth in full.

18        20.  Lender intends to pursue its remedies against the Joshua Ranch Project by way of

19  the non-judicial foreclosure commenced by the recordation of the Notices of Default against the Project,

20  however, by the express terms of sections 3 and 5 of both the A&D Guaranty and the Construction

21  Guaranty, Defendants agreed that Lender may collect from Defendants without pursuing or exhausting

22  claims against the Borrower and without first foreclosing on the Joshua Ranch Project.

23        21.  The amount due, owing and payable from Borrower and Defendants to Lender in

24  connection with the Acquisition and Development Loan is principal in the amount of $23,521,586.67,

25  interest accrued, late fees, appraisal fees, counsel fees and expenses, and such other amounts as may be

26  proven in the trial of this action.  In addition, Borrower and Defendants will owe Lender further interest

27

28

1  accrued, expenses incurred and attorneys' fees and costs incurred by Lender through the date of trial in
2  this matter.

3       22.    The amount due, owing and payable from Borrower and Defendants to Lender in
4  connection with the Construction Loan is principal in the amount of $3,909,292.35, interest accrued, late
5  fees, appraisal fees, counsel fees and expenses, and such other amounts as may be proven in the trial of
6  this action.  In addition, Borrower and Defendants will owe Lender further interest accrued, expenses
7  incurred and attorneys' fees and costs incurred by Lender through the date of trial in this matter.

8  **FIRST CAUSE OF ACTION**

9  **Damages for Breach of A&D Guaranty**

10  **(Against all Defendants)**

11       23.    Lender incorporates by reference and realleges paragraphs 1 through 22,
12  inclusive.

13       24.    Lender has performed all of the obligations required to be performed by it under
14  the A&D Guaranty.  Lender has timely made demand upon Defendants to perform their obligations
15  under the A&D Guaranty, including the payment to Lender of all amounts owing to Lender under the
16  A&D Promissory Note by Borrower, and Defendants have failed and refused to perform their
17  obligations under the A&D Guaranty.

18       25.    Under the terms of the A&D Building Loan Agreement and the A&D Deed of
19  Trust, Borrower is obligated to reimburse Lender for all fees, costs and expenses incurred by Lender or
20  counsel for Lender in connection with the enforcement of Lender's rights thereunder and the collection
21  of all amounts owing on the Acquisition and Development Loan, which obligation is included within the
22  obligations of Borrower guaranteed by Defendants under the A&D Guaranty.  Under section 13 of the
23  A&D Guaranty, Lender is similarly entitled to collect from Defendants the fees, costs and expenses
24  incurred by Lender or counsel for Lender in enforcing the A&D Guaranty or any obligations guaranteed
25  under the terms of the A&D Guaranty.  Lender has incurred such fees, costs, and expenses and will
26  continue in the future to incur the same.

27

28

OHS West:260404578.3
14743-48 JDH

-7-

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page   14
Exhibit   1

26.    Lender relied on the promises made by Defendants in the A&D Guaranty when it lent money to and made other financial accommodations available to Borrower in connection with the Acquisition and Development Loan.

27.    Defendants have breached and defaulted on their obligations to Lender under the A&D Guaranty by failing to repay after demand the indebtedness owed by Borrower to Lender in connection with the Acquisition and Development Loan.

28.    There is now due, owing and unpaid from Defendants to Lender under the A&D Guaranty, the amount due, owing and payable from Borrower to Lender in connection with the Acquisition and Development Loan in the principal amount of $23,521,586.67, together with accrued interest, late fees, appraisal fees, counsel fees and expenses, and such other amounts as may be proven in the trial of this action. In addition, Borrower and Defendants will owe Lender further interest accrued, expenses incurred and attorneys' fees and costs incurred by Lender through the date of trial in this matter.

## SECOND CAUSE OF ACTION

### Damages for Breach of Construction Guaranty

### (Against all Defendants)

29.    Lender incorporates by reference and realleges paragraphs 1 through 28, inclusive.

30.    Lender has performed all of the obligations required to be performed by it under the Construction Guaranty. Lender has timely made demand upon Defendants to perform their obligations under the Construction Guaranty, including the payment to Lender of all amounts owing to Lender under the Construction Promissory Note by Borrower, and Defendants have failed and refused to perform their obligations under the Construction Guaranty.

31.    Under the terms of the Construction Building Loan Agreement and the Construction Deed of Trust, Borrower is obligated to reimburse Lender for all fees, costs and expenses incurred by Lender or counsel for Lender in connection with the enforcement of Lender's rights thereunder and the collection of all amounts owing on the Acquisition and Development Loan, which

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page___15___
Exhibit___1___

1  obligation is included within the obligations of Borrower guaranteed by Defendants under the

2  Construction Guaranty.  Under section 13 of the Construction Guaranty, Lender is similarly entitled to

3  collect from Defendants the fees, costs and expenses incurred by Lender or counsel for Lender in

4  enforcing the Construction Guaranty or any obligations guaranteed under the terms of the Construction

5  Guaranty.  Lender has incurred such fees, costs, and expenses and will continue in the future to incur the

6  same.

7          32.    Lender relied on the promises made by Defendants in the Construction Guaranty

8  when it lent money to and made other financial accommodations available to Borrower in connection

9  with the Acquisition and Development Loan.

10          33.    Defendants have breached and defaulted on their obligations to Lender under the

11  Construction Guaranty by failing to repay after demand the indebtedness owed by Borrower to Lender

12  in connection with the Acquisition and Development Loan.

13          34.    There is now due, owing and unpaid from Defendants to Lender under the

14  Construction Guaranty the amount due, owing and payable from Borrower to Lender in connection with

15  the Acquisition and Development Loan in the principal amount of $3,909,292.35, together with accrued

16  interest, late fees, appraisal fees, counsel fees and expenses, and such other amounts as may be proven in

17  the trial of this action.  In addition, Borrower and Defendants will owe Lender further interest accrued,

18  expenses incurred and attorneys' fees and costs incurred by Lender through the date of trial in this

19  matter.

20

21                          **PRAYER FOR RELIEF**

22          Lender prays for relief as follows

23          1.    For damages against Defendants, and each of them, jointly and severally, in the

24  amount of principal and interest due, owing and payable to Lender under the terms of both the A&D

25  Guaranty and the Construction Guaranty at the time judgment is rendered in favor of Lender in this

26  action;

27

28

Page___16___
Exhibit___1___

2.    For damages against Defendants, and each of them, jointly and severally, in the amount of further accrued interest, costs incurred and attorneys' fees incurred by Lender in connection with Lender's efforts to enforce the obligations owing to Lender from the Borrower and from Defendants;

3.    For attorneys' fees and costs of suit incurred by Lender in this action; and

4.    For such other relief as the Court deems proper.

Dated: March 31, 2008

ORRICK, HERRINGTON & SUTCLIFFE LLP

Jeffery D. Hermann
Attorneys for Plaintiff
INDYMAC BANK, F.S.B.

OHS West:260404578.3
14743-48 JDH

-10-

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page 13
Exhibit 1

<u>VERIFICATION</u>

STATE OF CALIFORNIA  )
                     )
COUNTY OF SAN DIEGO )

       I, the undersigned, certify and declare that I have read the foregoing Verified Complaint For Damages For Breach of Guaranties ("Complaint") and know its contents. I am the Vice President of Plaintiff IndyMac Bank, F.S.B. and I am authorized to make this verification on its behalf. The matters stated in the Complaint are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

       Executed on March 2̲7̲, 2008, at San Diego, California, County of San Diego.

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                              John R. Terwilliger

Page __18__
Exhibit __1__

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "A"**

**A&D Promissory Note**

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

12-06-2005

Loan No. 52-8680000

**PROMISSORY NOTE**
(Acquisition and Development)

$36,571,000.00

Pasadena, California

December 6, 2005

THIS NOTE PROVIDES FOR INTEREST AT A FLUCTUATING RATE PER ANNUM
BASED ON THE PRIME RATE (PLUS ANY APPLICABLE SPREAD OVER THE PRIME
RATE INDICATED BELOW) ON THE TERMS AND CONDITIONS SET FORTH BELOW.

This Note is executed pursuant to the Building Loan Agreement dated as of the date of this
Note between **JOSHUA RANCH DEVELOPMENT, INC.**, a California corporation (the
"Borrower") and INDYMAC BANK, F.S.B., (the "Lender") (such Building Loan Agreement, as it
may from time to time be supplemented, modified and amended, being referred to in this Note as
the "Agreement"), the terms and conditions of which are hereby incorporated by reference.
Capitalized terms not otherwise defined in this Note shall have the meaning ascribed thereto in the
Agreement.

1.      FOR VALUE RECEIVED, the Borrower promises to pay to the Lender, or order, at
the Lender's office located at 3465 East Foothill Boulevard, FH-01-09, Pasadena, California 91107,
Attention: Homebuilder Division (or such other location specified by the Lender from time to time
in writing), the principal amount of Thirty Six Million Five Hundred Seventy One Thousand and
No/100 Dollars ($36,571,000.00), or so much of such amount as may be advanced by or on behalf
of the Lender from time to time, together with interest as provided in § 3 below.

2.      If not sooner paid, the principal of this Note shall be payable on July 1, 2007 (the
"Maturity Date"). Accrued interest shall be payable on the first day of each calendar month, on the
Maturity Date and on the date of final payment of the principal of this Note in full, except that any
interest which accrues after the Maturity Date or the acceleration of the maturity of this Note shall
be payable immediately and without demand.

3.      (a)      The unpaid principal of this Note outstanding from time to time shall bear
interest at a fluctuating rate per annum (computed on the basis of a year of 360 days and actual days
elapsed) equal at all times to the Prime Rate plus one-half percent (0.50%) per annum, with each
change in such rate taking effect simultaneously with the corresponding change in the Prime Rate
(such fluctuating rate of interest being referred to in this Note as the "Base Rate"). Notwithstanding
the preceding, in no event shall the Base Rate be less than seven and one-half percent (7.50%) per
annum.

REVISED MAY 2003

Page 20
Exhibit 1

(b)    Accrued interest not paid when due shall, from and after the date when due until the date such interest is paid, bear interest at the Alternate Rate.

(c)    Accrued interest not paid to Lender on or before the twentieth (20th) calendar day of each month in which it becomes due, Borrower shall pay, upon demand by the Lender, a late or collection charge equal to five percent (5.00%) of the amount of such unpaid interest payment. Borrower agrees that this late or collection charge represents a reasonable sum considering all of the circumstances existing on the date of execution of this Note and represents a fair and reasonable estimate of the costs that Lender will incur by reason of late payment. Borrower further agrees that proof of actual damages would be costly and inconvenient. Acceptance by Lender of payment of the late or collection charge payable pursuant to this Section 3(c) will not constitute a waiver of the Event of Default which occurred by reason of the failure of Borrower to make timely payment and will not prevent Lender from exercising any other rights or remedies available to Lender by reason of such Event of Default.

(d)    Notwithstanding § 3(a), any principal of this Note not paid when due (whether at the stated maturity, by acceleration or otherwise) shall, from and after the date when due until the date such principal is paid, bear interest at the Alternate Rate.

(e)    As used in this Note:

"Alternate Rate" means a fluctuating rate per annum (computed on the basis of a year of 360 days) equal at all times to the Base Rate plus 3.00% per annum, with each change in such rate taking effect simultaneously with the corresponding change in the Base Rate.

"Prime Rate" means the rate as published in the "Money Rates" section of The Wall Street Journal with changes thereon to be effective as of the date of such change. The foregoing notwithstanding, if The Wall Street Journal ceases to publish the "Money Rates" section or if there is a suspension of publication of The Wall Street Journal, then an alternative source for determining the Prime Rate shall be selected by Lender in its sole discretion."

4.    This Note may be prepaid in whole or in part at any time without penalty. All payments on this Note shall be made in lawful money of the United States in same day funds.

5.    This Note is the "Note" referred to in, and is entitled to the rights and benefits of, the Agreement, and evidences advances of the proceeds of the loan made by or on behalf of the Lender to the Borrower under the Agreement. Among other things, the Agreement provides for acceleration of the maturity of this Note upon the happening of certain stated events and may also contain additional provisions regarding voluntary and mandatory prepayments under certain

REVISED MAY 2003

Page    21
Exhibit    1

conditions. This Note is secured by the trust deed executed by the Borrower in favor of the Lender pursuant to the Agreement and by any other collateral agreements referred to in the Agreement which purport to secure this Note.

6.      This Note shall be governed by, and construed and enforced in accordance with, the laws of California.

7.      Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness that constitutes interest, as well as all other charges made in connection with the indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

8. Time is of the essence of each and every provision of this Note.

"BORROWER":

JOSHUA RANCH DEVELOPMENT, INC.,
a California corporation

By:

   Andrew J. Eliopulos, President

REVISED MAY 2003

Page___22_____
Exhibit____1_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "B"**

**A&D Guaranty**

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page 23
Exhibit 1

12-06-2005

Loan No. 52-8680000

## GENERAL GUARANTY

(Real Estate Secured Loan)

TO: INDYMAC BANK, F.S.B.

THIS GENERAL GUARANTY ("Guaranty"), dated December 6, 2005, is made by **J. P. ELIOPULOS ENTERPRISES, INC.**, a California corporation, ("JPEE"), **ANDREW J. ELIOPULOS** and **GEORGIA ELIOPULOS** (individually and collectively, the "Guarantor"), in favor of INDYMAC BANK, F.S.B. (the "Lender"), and is executed pursuant to among other things, the Building Loan Agreement and other Loan Documents dated as of the date of this Guaranty between the Lender and JOSHUA RANCH DEVELOPMENT, INC., a California corporation (the "Borrower") (such Building Loan Agreement, as it may from time to time be supplemented, modified and amended, being referred to in this Guaranty as the "Agreement"), the provisions of which are incorporated in this Guaranty by reference. The Agreement provides, among other things, for rules of construction which apply to this Guaranty. Capitalized terms used in this Guaranty and not otherwise defined are used with the meanings set forth in the Agreement.

Subject to the terms and conditions set forth in the Agreement, the Lender has agreed to make a loan to the Borrower in the amount of $36,571,000.00 (the "Loan") to finance the real estate project of the Borrower known as Joshua Ranch (the "Project"). The Loan will be secured by a Trust Deed executed by the Borrower with respect to the Project. As a condition of the obligation of the Lender to make the Loan, the Guarantor is required to execute and deliver to the Lender this Guaranty.

To induce the Lender to make the Loan and for other valuable consideration, the Guarantor agrees as follows:

1.  _Guaranteed Obligations_.  The Guarantor absolutely and unconditionally guarantees the punctual and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the following (the "Guaranteed Obligations"):  (a) all present and future indebtedness evidenced by the note dated as of the date of this Guaranty in the face principal amount of $36,571,000.00 executed by the Borrower to the order of the Lender, including principals, interests and all other amounts payable under the terms of the Note; and (b) all other present and future obligations of the Borrower to the Lender under the Loan Documents (including any Environmental Indemnity executed by the Borrower in favor of the Lender and obligations in respect of Letters of Credit and Set Aside letters); in each case as such indebtedness and other obligations may from time to time be supplemented, modified, amended, renewed and extended, whether evidenced by new or additional Documents or resulting in a change in the interest rate on any indebtedness or otherwise.  Upon the occurrence of any Event of Default, all Guaranteed Obligations shall, at the option of the Lender, immediately become due and payable by the Guarantor without protest, presentment, notice of dishonor, demand or

REVISED MAY 2003

2

further notice of any kind, all of which are expressly waived by the Guarantor, and irrespective of whether any Guaranteed Obligations have then become due and payable by the Borrower or any other Loan Party (each of the Borrower and any other Loan Party other than the Guarantor being referred to in this Guaranty as an "other Loan Party").

2.    Nature of Guaranty. This Guaranty is a guaranty of payment and performance and not of collection and applies to all Guaranteed Obligations, whether existing now or in the future, including (a) interest and other Guaranteed Obligations arising or accruing after bankruptcy of any Loan Party or any sale or other disposition of any security for this Guaranty or for the obligations of any other Loan Party (any such security being referred to in this Guaranty as the "Security"), and (b) any Guaranteed Obligations that survive repayment of the Loan. This Guaranty and any Security for this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment or performance of any Guaranteed Obligations is rescinded or must otherwise be returned by the Lender or any other Person upon the bankruptcy, insolvency or reorganization of any Loan Party or otherwise, all as though such payment or performance had not occurred. The Guarantor shall have no authority, and hereby waives any right, to revoke this Guaranty, but if any purported revocation shall be deemed to have occurred by operation of law or otherwise, the provisions of this Guaranty shall continue to apply notwithstanding such revocation.

3.    Obligations Independent. The obligations of the Guarantor under this Guaranty are independent of the obligations of any other Loan Party under the Loan Documents (such obligations of any other Loan Party, including the Borrower's obligations in respect of the Guaranteed Obligations, being referred to in this Guaranty as the "Other Obligations") and any Security, and the enforceability of any Security for this Guaranty is likewise independent of any such Other Obligations and any other Security. The Lender may bring action against the Guarantor and otherwise enforce this Guaranty or any Security for this Guaranty without bringing action against any other Loan Party or joining any other Loan Party in any action against the Guarantor, and otherwise independently of any other Remedy that may be available to the Lender at any time with respect to any Other Obligations or Security. The Guarantor waives any right to require the Lender at any time to proceed against any other Loan Party, apply any Security or otherwise enforce, proceed against or exhaust any Other Obligations or Security or pursue any other Remedy in the Lender's power.

4.    Action with Respect to Other Obligations or Security. The Guarantor authorizes the Lender, without notice or demand and without affecting its liability under or the enforceability of this Guaranty or any Security for this Guaranty, from time to time to: (a) supplement, modify, amend, renew, extend, accept partial payments or performance on or otherwise change the time, manner or place of payment or performance or the interest rate or other ....s of the amount of, or releas...,  ...ey, term... ... ...th ...ydion...n, ... ...th ...te, exchange, substitute, transfer or consent to the transfer of or enter into or give any other agreement, approval, waiver or consent with respect to or in exchange for any Other Obligations or Security or any of the Loan Documents; (b) receive and hold additional Security or guaranties;

REVISED MAY 2003

3

(c) release any other Loan Party from any personal liability with respect to any Other Obligations and participate in any bankruptcy or reorganization of any other Loan Party in such manner as the Lender may determine; and (d) accelerate, settle, compromise, compound, sue for, collect or otherwise liquidate, enforce or deal with any Other Obligations or Security (including judicial or nonjudicial sale or other disposition of any Security), bid and purchase at any sale or other disposition of any Security and apply any Security and any proceeds or other payments received by the Lender, in each case in such order and manner as the Lender may determine.

5.    _Waiver of Defenses_.  The Guarantor waives any defense to the enforcement of this Guaranty or any Security for this Guaranty arising by reason of:  (a) any present or future Laws or orders affecting the terms of, or the Lender's Remedies with respect to, any Other Obligations or Security; (b) the absence or cessation of personal liability of any other Loan Party with respect to any Other Obligations; (c) the failure of any other Person to execute this Guaranty or any other guaranty or agreement; (d) the failure of any Loan Party to properly execute any Loan Document or otherwise comply with applicable legal formalities; (e) the unenforceability or invalidity of any Other Obligations or Security or the lack of perfection or failure of priority or any other loss or impairment of any Security; (f) any discharge or release of any other Loan Party or any Other Obligations or Security or any impairment or suspension of any Remedies of the Lender, whether resulting from any act or omission of the Lender or any other Person or by operation of law or otherwise; (g) any bankruptcy, insolvency or reorganization of any Loan Party or any disability or other defense of any other Loan Party with respect to any Other Obligations or Security; (h) any failure of the Lender to disclose to the Guarantor any information relating to the financial condition, operations, properties or prospects of any other Loan Party now or in the future known to the Lender (the Guarantor waiving any duty on the part of the Lender to disclose such information); (i) any failure of the Lender to monitor proper application of loan funds or compliance with the Loan Documents, or to preserve, insure or protect any Security or any subrogation, contribution or reimbursement rights of the Guarantor; (j) any application of proceeds or payments received by the Lender to obligations other than the Guaranteed Obligations; (k) any other action by the Lender, whether authorized by § 4 or otherwise, or any omission by the Lender or other failure of the Lender to pursue, or any delay in pursuing, any other Remedy in the Lender's power; or (l) any defense arising from a claim that the obligations of the Guarantor are greater than those of the Borrower or any other Loan Party.  Guarantor waives all rights and defenses arising out of any election of remedies by the Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

      The Guarantor waives all rights and defenses that the Guarantor may have because the Borrower's debt is secured by real property. This means, among other things:

      1.    The Lender may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower.

REVISED MAY 2003

4

2.     If the Lender forecloses on any real property collateral pledged by the Borrower:

(A)     The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(B)     The Lender may collect from the Guarantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from the Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because the Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

The Guarantor further waives: (i) any defense to the recovery by the Lender against the Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any Security for this Guaranty after a nonjudicial sale or other disposition of any Security for any Other Obligations that is determined, for any reason, to not have been conducted in a commercially reasonable manner, even though, in the case of any such Security subject to the Uniform Commercial Code, such failure may prevent the Guarantor from exercising Reimbursement Rights against any other Loan Party; (ii) any rights, defenses or benefits that are or may be available to the Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code, or comparable provisions of the Laws of any other jurisdiction and all other suretyship defenses it would otherwise have under the Laws of California or any other jurisdiction; (iii) all benefits of any statute of limitations affecting the Guarantor's liability under or the enforcement of this Guaranty or any Other Obligations or Security; (iv) all setoffs and counterclaims; (v) promptness, diligence, presentment, demand for performance and protest; (vi) notice of nonperformance, default, acceleration, protest or dishonor; (vii) except for any notice otherwise required by applicable Laws that may not be effectively waived by the Guarantor, notice of sale or other disposition of any Security; and (viii) notice of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Guaranteed Obligations, and all other notices of any kind with respect to any Other Obligations.

6.     Waiver of Reimbursement Rights. Until all Other Obligations have been paid and performed in full, the Guarantor shall not exercise any rights of subrogation, reimbursement, contribution or indemnification or any similar rights or remedies (collectively, "Reimbursement Rights") that the Guarantor now has or may in the future have against any other Loan Party and any benefit of, and any right to participate in, any Security or Other Obligations now or in the future held by the Lender. If the Guarantor nevertheless receives payment of any amount on account of any such

REVISED MAY 2003

5

Reimbursement Rights or otherwise in respect of any payment or performance by the Guarantor of any Guaranteed Obligations prior to payment and performance in full of all Other Obligations, such amount shall be held in trust for the benefit of the Lender and immediately paid to the Lender for application to the Other Obligations in such order and manner as the Lender may determine.

7.    Representations of the Guarantor.  The Guarantor represents and warrants to the Lender that: (a) this Guaranty is executed at the request of the Borrower; (b) the Guarantor has established adequate means of obtaining from any other Loan Parties on a continuing basis information pertaining to, and is now and on a continuing basis will be completely familiar with, the financial condition, operations, properties and prospects of such other Loan Parties; (c) the Guarantor has received and approved copies of all of the other Loan Documents; and (d) no oral promises, assurances, representations or warranties have been made by or on behalf of the Lender to induce the Guarantor to execute and deliver this Guaranty.

8.    Financial Statements and Tax Returns.  The Guarantor hereby agrees to deliver or cause to be delivered to the Lender, the following: (a) within 90 days after the end of each fiscal year of JPEE and individual Guarantor for so long as any portion of the Loan is outstanding, Financial Statements for JPEE and individual Guarantor, in form and detail satisfactory to the Lender, for and as at the end of such fiscal year, (b) Tax Returns for JPEE and individual Guarantor within 90 days of filing; (c) upon request by the Lender from time to time copies of audited Financial Statements prepared for JPEE and individual Guarantor, in each case certified in a manner acceptable to the Lender.

9.    Indemnification by the Guarantor.  Without limitation on any other obligations of the Guarantor or Remedies of the Lender under this Guaranty, the Guarantor shall indemnify, defend and save and hold harmless the Lender from and against, and shall pay on demand, any and all losses, liabilities, damages, costs, expenses and charges (including the reasonable fees and disbursements of the Lender's legal counsel and the reasonable charges of the Lender's internal legal counsel) suffered or incurred by the Lender as a result of (a) any failure of any Guaranteed Obligations to be the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their terms, except as enforcement may be limited by bankruptcy, insolvency or other similar Laws affecting the rights of creditors generally, or (b) any failure of the Borrower to pay and perform any Guaranteed Obligations in accordance with the terms of such Guaranteed Obligations.

10.    Rights of Setoff.  Upon the occurrence and during the continuance of any Event of Default, the Lender is authorized at any time and from time to time to the fullest extent permitted by applicable Laws, and without notice or demand, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Lender to or for the credit or account of the Guarantor against any and all obligations of the Guarantor under this Guaranty.

REVISED MAY 2003

6

11.    **Waivers and Amendments**. No supplement to, modification or amendment of, or waiver, consent or approval under, any provision of this Guaranty shall be effective unless in writing and signed by the Lender, and any waiver, consent or approval shall be effective only in the specific instance and for the specific purpose for which given.

12.    **Remedies**. Each of the Remedies provided in this Guaranty is cumulative and not exclusive of, and shall not prejudice, any other Remedy provided in this Guaranty or by applicable Laws or under any other Loan Document. Each Remedy may be exercised from time to time as often as deemed necessary by the Lender, and in such order and manner as the Lender may determine. No failure or delay on the part of the Lender in exercising any Remedy shall operate as a waiver of such Remedy; nor shall any single or partial exercise of any Remedy preclude any other or further exercise of such Remedy or of any other Remedy.

13.    **Costs and Expenses**. The Guarantor shall pay to the Lender on demand all costs, expenses and charges of the Lender in connection with the enforcement of, or the exercise of any Remedy or any other action taken by the Lender under or in connection with, this Guaranty or any Guaranteed Obligations, including the reasonable fees and disbursements of the Lender's legal counsel and other out-of-pocket expenses, and the reasonable charges of the Lender's internal legal counsel.

14.    **Notices**. All notices and other communications provided under this Guaranty shall be in writing and mailed or delivered to the Guarantor at the address set forth on the signature page of this Guaranty or at any other address in the State of California as may be designated by the Guarantor in a written notice sent to the Lender in accordance with § 7.03 of the Agreement. Any notice or other communication will be effective (a) if given by mail, on the earlier of receipt or the third day after deposit in the United States mails with first-class postage prepaid, or (b) if given by personal delivery, when delivered.

15.    **Binding Agreement**. This Guaranty shall be binding on and inure to the benefit of the Guarantor and the Lender and their respective successors and assigns, except that the Guarantor shall have no right to assign any interest under this Guaranty without the prior written consent of the Lender. The Lender may from time to time assign its interest under this Guaranty in whole or in part without notice to or the consent of the Guarantor.

16.    **Multiple Guarantors**. If more than one Person signs this Guaranty as Guarantor, (a) the term "Guarantor" shall mean each such Person, (b) the obligations of each Guarantor shall be joint, several and independent, and (c) this Guaranty shall be construed and enforced as though each Guarantor executed a separate guaranty on the terms set forth in this Guaranty.

17.    _____ _____ This Guaranty ____ __ _____ _ _____ ____ ___ in accordance with the Laws of California.

REVISED MAY 2003

7

18.    <u>Time of Essence.</u>  Time is of the essence of each and every provision of this Guaranty.

19.    <u>Financial Covenant</u>.  JPEE and affiliated companies (combined) shall maintain the following financial capabilities:

a.    liquid assets of not less than Two Million and No/100 Dollars $2,000,000.00) to be tested as of the end of each calendar quarter.   Liquid assets shall mean cash or readily marketable publicly traded securities traded or nationally recognized public exchange.

20.    <u>Nature of Waivers</u>.  THE GUARANTOR HEREBY ACKNOWLEDGES THAT (A) THE GUARANTOR HAS CONSULTED WITH LEGAL COUNSEL TO UNDERSTAND THE FULL IMPACT OF THE WAIVERS MADE BY THE GUARANTOR PURSUANT TO THIS GUARANTY, INCLUDING THOSE SET FORTH IN §§ 2, 3, 4, 5, 6 AND 20 HEREOF, (B) THE GUARANTOR UNDERSTANDS THE FULL IMPACT OF SUCH WAIVERS, AND (C) SUCH WAIVERS HAVE BEEN KNOWINGLY AND WILLINGLY MADE BY THE GUARANTOR.

21.    <u>Waiver of Jury Trial</u>.  EACH OF THE LENDER AND THE GUARANTOR WAIVE TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING (INCLUDING COUNTERCLAIMS), WHETHER AT LAW OR EQUITY, BROUGHT BY THE LENDER OR THE GUARANTOR AGAINST THE OTHER ON MATTERS ARISING OUT OF OR IN ANY WAY RELATED TO OR CONNECTED WITH THIS GUARANTY, THE OTHER LOAN DOCUMENTS, THE LOAN OR ANY TRANSACTION CONTEMPLATED BY, OR THE RELATIONSHIP BETWEEN THE LENDER AND THE GUARANTOR OR ANY OTHER LOAN PARTY OR ANY ACTION OR INACTION BY ANY PARTY UNDER, ANY OF THE LOAN DOCUMENTS.

"GUARANTOR":                          Guarantor's Address

ANDREW J. ELIOPULOS                    2837 Retro Place
                                       Lancaster, CA

GEORGIA ELIOPULOS                      2717 Stillmeadow Lane
                                       Lancaster, CA

REVISED MAY 2003

Page   30
Exhibit   1

8

**J. P. ELIOPULOS ENTERPRISES, INC.,**        42225 10th Street West
a California corporation                     Suite 101
                                             Lancaster, California 93534

By: _____
    Andrew J. Eliopulos, President

REVISED MAY 2003

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit "C"**

**Construction Promissory Note**

OHS West:260404578.3
14743-48 JDH

Page_____32_____
Exhibit_____1_____

01-02-2007

Loan No. 53-0980000

## PROMISSORY NOTE

$14,533,000.00                                   Pasadena, California

January 2, 2007

THIS NOTE PROVIDES FOR INTEREST AT A FLUCTUATING RATE PER ANNUM BASED ON THE PRIME RATE (PLUS ANY APPLICABLE SPREAD OVER THE PRIME RATE INDICATED BELOW) ON THE TERMS AND CONDITIONS SET FORTH BELOW.

This Note is executed pursuant to the Building Loan Agreement dated as of the date of this Note between JOSHUA RANCH DEVELOPMENT, INC., a California corporation (the "Borrower") and INDYMAC BANK, F.S.B., (the "Lender") (such Building Loan Agreement, as it may from time to time be supplemented, modified and amended, being referred to in this Note as the "Agreement"), the terms and conditions of which are hereby incorporated by reference. Capitalized terms not otherwise defined in this Note shall have the meaning ascribed thereto in the Agreement.

1.      FOR VALUE RECEIVED, the Borrower promises to pay to the Lender, or order, at the Lender's office located at 155 North Lake Avenue, LK-11-15, Pasadena, CA 91101, Attention: Homebuilder Division (or such other location specified by the Lender from time to time in writing), the principal amount of Fourteen Million Five Hundred Thirty Three Thousand and No/100 Dollars ($14,533,000.00), or so much of such amount as may be advanced by or on behalf of the Lender from time to time, together with interest as provided in § 3 below.

2.      If not sooner paid, the principal of this Note shall be payable on January 2, 2009 (the "Maturity Date"). Accrued interest shall be payable on the first day of each calendar month, on the Maturity Date and on the date of final payment of the principal of this Note in full, except that any interest which accrues after the Maturity Date or the acceleration of the maturity of this Note shall be payable immediately and without demand.

3.      (a)      The unpaid principal of this Note outstanding from time to time shall bear interest at a fluctuating rate per annum (computed on the basis of a year of 360 days and actual days elapsed) equal at all times to the Prime Rate plus one half of one percent (0.50%) per annum, with each change in such rate taking effect simultaneously with the corresponding change in the Prime Rate (such fluctuating rate of interest being referred to in this Note as the "Base Rate"). Notwithstanding the preceding, in no event shall the Base Rate be less than eight and three quarters percent (8.75%) per annum.

Page  33
Exhibit  1

(b)    Accrued interest not paid when due shall, from and after the date when due until the date such interest is paid, bear interest at the Alternate Rate.

(c)    Accrued interest not paid to Lender on or before the twentieth (20th) calendar day of each month in which it becomes due, Borrower shall pay, upon demand by the Lender, a late or collection charge equal to five percent (5.00%) of the amount of such unpaid interest payment. Borrower agrees that this late or collection charge represents a reasonable sum considering all of the circumstances existing on the date of execution of this Note and represents a fair and reasonable estimate of the costs that Lender will incur by reason of late payment. Borrower further agrees that proof of actual damages would be costly and inconvenient. Acceptance by Lender of payment of the late or collection charge payable pursuant to this Section 3(c) will not constitute a waiver of the Event of Default which occurred by reason of the failure of Borrower to make timely payment and will not prevent Lender from exercising any other rights or remedies available to Lender by reason of such Event of Default.

(d)    Notwithstanding § 3(a), any principal of this Note not paid when due (whether at the stated maturity, by acceleration or otherwise) shall, from and after the date when due until the date such principal is paid, bear interest at the Alternate Rate.

(e)    As used in this Note:

"Alternate Rate" means a fluctuating rate per annum (computed on the basis of a year of 360 days) equal at all times to the Base Rate plus 3.00% per annum, with each change in such rate taking effect simultaneously with the corresponding change in the Base Rate.

"Prime Rate" means the rate as published in the "Money Rates" section of The Wall Street Journal with changes thereon to be effective as of the date of such change. The foregoing notwithstanding, if The Wall Street Journal ceases to publish the "Money Rates" section or if there is a suspension of publication of The Wall Street Journal, then an alternative source for determining the Prime Rate shall be selected by Lender in its sole discretion."

4.    This Note may be prepaid in whole or in part at any time without penalty. All payments on this Note shall be made in lawful money of the United States in same day funds.

5.    This Note is the "Note" referred to in, and is entitled to the rights and benefits of, the Agreement, and evidences advances of the proceeds of the loan made by or on behalf of the Lender to the Borrower under the Agreement. Among other things, the Agreement provides for acceleration of the maturity of this Note upon the happening of certain stated events and may also contain additional provisions regarding voluntary and mandatory prepayments under certain

Page___3 4___
Exhibit___/___

conditions. This Note is secured by the trust deed executed by the Borrower in favor of the Lender pursuant to the Agreement and by any other collateral agreements referred to in the Agreement which purport to secure this Note.

6.      This Note shall be governed by, and construed and enforced in accordance with, the laws of California.

7.      Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness that constitutes interest, as well as all other charges made in connection with the indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

8. Time is of the essence of each and every provision of this Note.

"BORROWER":

JOSHUA RANCH DEVELOPMENT, INC.
a California corporation

By: _____
      Andrew J. Eliopulos, President

Page ___35___
Exhibit ___1___

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Exhibit "D"

### Construction Guaranty

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page ___36___
Exhibit ___1___

01-02-2007

Loan No. 53-0980000

## GENERAL GUARANTY

(Real Estate Secured Loan)

TO:  INDYMAC BANK, F.S.B.

THIS GENERAL GUARANTY ("Guaranty"), dated January 2, 2007, is made by J. P. ELIOPULOS ENTERPRISES, INC., a California corporation; ANDREW J. ELIOPULOS, an individual and GEORGIA ELIOPULOS, an individual (individually and collectively, the "Guarantor"), in favor of INDYMAC BANK, F.S.B. (the "Lender"), and is executed pursuant to the Building Loan Agreement dated as of the date of this Guaranty between the Lender and JOSHUA RANCH DEVELOPMENT, INC., a California corporation (the "Borrower") (such Building Loan Agreement, as it may from time to time be supplemented, modified and amended, being referred to in this Guaranty as the "Agreement"), the provisions of which are incorporated in this Guaranty by reference.  The Agreement provides, among other things, for rules of construction which apply to this Guaranty.  Capitalized terms used in this Guaranty and not otherwise defined are used with the meanings set forth in the Agreement.

Subject to the terms and conditions set forth in the Agreement, the Lender has agreed to make a loan to the Borrower in the amount of $14,533,000.00 (the "Loan") to finance the real estate project of the Borrower known as Joshua Ranch (the "Project").  The Loan will be secured by a Trust Deed executed by the Borrower with respect to the Project.  As a condition of the obligation of the Lender to make the Loan, the Guarantor is required to execute and deliver to the Lender this Guaranty.

To induce the Lender to make the Loan and for other valuable consideration, the Guarantor agrees as follows:

1.    Guaranteed Obligations.  The Guarantor absolutely and unconditionally guarantees the punctual and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the following (the "Guaranteed Obligations"): (a) all present and future indebtedness evidenced by the Note dated the date of this Guaranty in the face principal amount of $14,533,000.00 executed by the Borrower to the order of the Lender, including principal, interest and all other amounts payable under the terms of the Note; and (b) all other present and future obligations of the Borrower to the Lender under the Loan Documents (including any Environmental Indemnity executed by the Borrower in favor of the Lender and obligations in respect of Letters of Credit and Set Aside letters); in each case as such indebtedness and other obligations may from time to time be supplemented, modified, amended, renewed and extended, whether evidenced by new or additional Documents or resulting in a change in the interest rate on any indebtedness or otherwise.  Upon the occurrence of any Event of Default, all Guaranteed Obligations shall, at the option of the Lender, immediately become due and payable by the Guarantor without protest, presentment, notice of dishonor, demand or further notice of any kind, all of which are expressly waived by the Guarantor, and irrespective of

2

whether any Guaranteed Obligations have then become due and payable by the Borrower or any
other Loan Party (each of the Borrower and any other Loan Party other than the Guarantor being
referred to in this Guaranty as an "other Loan Party").

2.    Nature of Guaranty. This Guaranty is a guaranty of payment and performance and
not of collection and applies to all Guaranteed Obligations, whether existing now or in the future,
including (a) interest and other Guaranteed Obligations arising or accruing after bankruptcy of
any Loan Party or any sale or other disposition of any security for this Guaranty or for the
obligations of any other Loan Party (any such security being referred to in this Guaranty as the
"Security"), and (b) any Guaranteed Obligations that survive repayment of the Loan. This
Guaranty and any Security for this Guaranty shall continue to be effective or be reinstated, as the
case may be, if at any time any payment or performance of any Guaranteed Obligations is
rescinded or must otherwise be returned by the Lender or any other Person upon the bankruptcy,
insolvency or reorganization of any Loan Party or otherwise, all as though such payment or
performance had not occurred. The Guarantor shall have no authority, and hereby waives any
right, to revoke this Guaranty, but if any purported revocation shall be deemed to have occurred
by operation of law or otherwise, the provisions of this Guaranty shall continue to apply
notwithstanding such revocation.

3.    Obligations Independent. The obligations of the Guarantor under this Guaranty are
independent of the obligations of any other Loan Party under the Loan Documents (such
obligations of any other Loan Party, including the Borrower's obligations in respect of the
Guaranteed Obligations, being referred to in this Guaranty as the "Other Obligations") and any
Security, and the enforceability of any Security for this Guaranty is likewise independent of any
such Other Obligations and any other Security. The Lender may bring action against the
Guarantor and otherwise enforce this Guaranty or any Security for this Guaranty without bringing
action against any other Loan Party or joining any other Loan Party in any action against the
Guarantor, and otherwise independently of any other Remedy that may be available to the Lender
at any time with respect to any Other Obligations or Security. The Guarantor waives any right to
require the Lender at any time to proceed against any other Loan Party, apply any Security or
otherwise enforce, proceed against or exhaust any Other Obligations or Security or pursue any
other Remedy in the Lender's power.

4.    Action with Respect to Other Obligations or Security. The Guarantor authorizes
the Lender, without notice or demand and without affecting its liability under or the
enforceability of this Guaranty or any Security for this Guaranty, from time to time to:
(a) supplement, modify, amend, renew, extend, accept partial payments or performance on or
otherwise change the time, manner or place of payment or performance or the interest rate or
other terms or the amount of, or release, reconvey, terminate, waive, abandon, subordinate,
exchange, substitute, transfer or consent to the transfer of or enter into or give any other
agreement, approval, waiver or consent with respect to or in exchange for any Other Obligations
or Security or any of the Loan Documents; (b) receive and hold additional Security or guaranties;
(c) release any other Loan Party from any personal liability with respect to any Other Obligations

Page 38
Exhibit 1

3

and participate in any bankruptcy or reorganization of any other Loan Party in such manner as the Lender may determine; and (d) accelerate, settle, compromise, compound, sue for, collect or otherwise liquidate, enforce or deal with any Other Obligations or Security (including judicial or nonjudicial sale or other disposition of any Security), bid and purchase at any sale or other disposition of any Security and apply any Security and any proceeds or other payments received by the Lender, in each case in such order and manner as the Lender may determine.

5.    <u>Waiver of Defenses</u>.  The Guarantor waives any defense to the enforcement of this Guaranty or any Security for this Guaranty arising by reason of:  (a) any present or future Laws or orders affecting the terms of, or the Lender's Remedies with respect to, any Other Obligations or Security; (b) the absence or cessation of personal liability of any other Loan Party with respect to any Other Obligations; (c) the failure of any other Person to execute this Guaranty or any other guaranty or agreement; (d) the failure of any Loan Party to properly execute any Loan Document or otherwise comply with applicable legal formalities; (e) the unenforceability or invalidity of any Other Obligations or Security or the lack of perfection or failure of priority or any other loss or impairment of any Security; (f) any discharge or release of any other Loan Party or any Other Obligations or Security or any impairment or suspension of any Remedies of the Lender, whether resulting from any act or omission of the Lender or any other Person or by operation of law or otherwise; (g) any bankruptcy, insolvency or reorganization of any Loan Party or any disability or other defense of any other Loan Party with respect to any Other Obligations or Security; (h) any failure of the Lender to disclose to the Guarantor any information relating to the financial condition, operations, properties or prospects of any other Loan Party now or in the future known to the Lender (the Guarantor waiving any duty on the part of the Lender to disclose such information); (i) any failure of the Lender to monitor proper application of loan funds or compliance with the Loan Documents, or to preserve, insure or protect any Security or any subrogation, contribution or reimbursement rights of the Guarantor; (j) any application of proceeds or payments received by the Lender to obligations other than the Guaranteed Obligations; (k) any other action by the Lender, whether authorized by § 4 or otherwise, or any omission by the Lender or other failure of the Lender to pursue, or any delay in pursuing, any other Remedy in the Lender's power; or (l) any defense arising from a claim that the obligations of the Guarantor are greater than those of the Borrower or any other Loan Party.  Guarantor waives all rights and defenses arising out of any election of remedies by the Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

The Guarantor waives all rights and defenses that the Guarantor may have because the Borrower's debt is secured by real property.  This means, among other things:

1.    The Lender may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower.

4

2.  If the Lender forecloses on any real property collateral pledged by the Borrower:

    (A)  The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

    (B)  The Lender may collect from the Guarantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from the Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because the Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

The Guarantor further waives: (i) any defense to the recovery by the Lender against the Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any Security for this Guaranty after a nonjudicial sale or other disposition of any Security for any Other Obligations that is determined, for any reason, to not have been conducted in a commercially reasonable manner, even though, in the case of any such Security subject to the Uniform Commercial Code, such failure may prevent the Guarantor from exercising Reimbursement Rights against any other Loan Party; (ii) any rights, defenses or benefits that are or may be available to the Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code, or comparable provisions of the Laws of any other jurisdiction and all other suretyship defenses it would otherwise have under the Laws of California or any other jurisdiction; (iii) all benefits of any statute of limitations affecting the Guarantor's liability under or the enforcement of this Guaranty or any Other Obligations or Security; (iv) all setoffs and counterclaims; (v) promptness, diligence, presentment, demand for performance and protest; (vi) notice of nonperformance, default, acceleration, protest or dishonor; (vii) except for any notice otherwise required by applicable Laws that may not be effectively waived by the Guarantor, notice of sale or other disposition of any Security; and (viii) notice of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Guaranteed Obligations, and all other notices of any kind with respect to any Other Obligations.

6.  _Waiver of Reimbursement Rights_.  Until all Other Obligations have been paid and performed in full, the Guarantor shall not exercise any rights of subrogation, reimbursement, contribution or indemnification or any similar rights or remedies (collectively, "_Reimbursement Rights_") against any other Loan Party, and waives any right to enforce any Remedy which the Lender now has or may in the future have against any other Loan Party and any benefit of, and any right to participate in, any Security or Other Obligations now or in the future held by the Lender. If the Guarantor nevertheless receives payment of any amount on account of any such Reimbursement Rights or otherwise in respect of any payment or performance by the Guarantor

5

of any Guaranteed Obligations prior to payment and performance in full of all Other Obligations, such amount shall be held in trust for the benefit of the Lender and immediately paid to the Lender for application to the Other Obligations in such order and manner as the Lender may determine.

7.    Representations of the Guarantor.  The Guarantor represents and warrants to the Lender that:  (a) this Guaranty is executed at the request of the Borrower; (b) the Guarantor has established adequate means of obtaining from any other Loan Parties on a continuing basis information pertaining to, and is now and on a continuing basis will be completely familiar with, the financial condition, operations, properties and prospects of such other Loan Parties; (c) the Guarantor has received and approved copies of all of the other Loan Documents; and (d) no oral promises, assurances, representations or warranties have been made by or on behalf of the Lender to induce the Guarantor to execute and deliver this Guaranty.

8.    Financial Statements and Tax Returns.  The Guarantor hereby agrees to deliver to the Lender, the following:  (a) within 90 days after the end of each fiscal year of the Guarantor for so long as any portion of the Loan is outstanding, Financial Statements for the Guarantor, in form and detail satisfactory to the Lender, for and as at the end of such fiscal year, (b)  Tax Returns for Andrew J. Eliopulos and Georgia Eliopulos within 90 days of filing; (c), quarterly Financial Statements for J. P. Eliopulos Enterprises, Inc. in form and detail satisfactory to the Lender within 45 days of quarter end, and (d) upon request by the Lender from time to time copies of audited Financial Statements prepared for the Guarantor, in each case certified in a manner acceptable to the Lender.

9.    Indemnification by the Guarantor.  Without limitation on any other obligations of the Guarantor or Remedies of the Lender under this Guaranty, the Guarantor shall indemnify, defend and save and hold harmless the Lender from and against, and shall pay on demand, any and all losses, liabilities, damages, costs, expenses and charges (including the reasonable fees and disbursements of the Lender's legal counsel and the reasonable charges of the Lender's internal legal counsel) suffered or incurred by the Lender as a result of (a) any failure of any Guaranteed Obligations to be the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their terms, except as enforcement may be limited by bankruptcy, insolvency or other similar Laws affecting the rights of creditors generally, or (b) any failure of the Borrower to pay and perform any Guaranteed Obligations in accordance with the terms of such Guaranteed Obligations.

10.    Rights of Setoff.  Upon the occurrence and during the continuance of any Event of Default, the Lender is authorized at any time and from time to time to the fullest extent permitted by applicable Laws, and without notice or demand, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Lender to or for the credit or account of the Guarantor against any and all obligations of the Guarantor under this Guaranty.

6

11.    <u>Waivers and Amendments</u>.  No supplement to, modification or amendment of, or waiver, consent or approval under, any provision of this Guaranty shall be effective unless in writing and signed by the Lender, and any waiver, consent or approval shall be effective only in the specific instance and for the specific purpose for which given.

12.    <u>Remedies</u>.  Each of the Remedies provided in this Guaranty is cumulative and not exclusive of, and shall not prejudice, any other Remedy provided in this Guaranty or by applicable Laws or under any other Loan Document.  Each Remedy may be exercised from time to time as often as deemed necessary by the Lender, and in such order and manner as the Lender may determine.  No failure or delay on the part of the Lender in exercising any Remedy shall operate as a waiver of such Remedy; nor shall any single or partial exercise of any Remedy preclude any other or further exercise of such Remedy or of any other Remedy.

13.    <u>Costs and Expenses</u>.  The Guarantor shall pay to the Lender on demand all costs, expenses and charges of the Lender in connection with the enforcement of, or the exercise of any Remedy or any other action taken by the Lender under or in connection with, this Guaranty or any Guaranteed Obligations, including the reasonable fees and disbursements of the Lender's legal counsel and other out-of-pocket expenses, and the reasonable charges of the Lender's internal legal counsel.

14.    <u>Notices</u>.  All notices and other communications provided under this Guaranty shall be in writing and mailed or delivered to the Guarantor at the address set forth on the signature page of this Guaranty or at any other address in the State of California as may be designated by the Guarantor in a written notice sent to the Lender in accordance with § 7.03 of the Agreement.  Any notice or other communication will be effective (a) if given by mail, on the earlier of receipt or the third day after deposit in the United States mails with first-class postage prepaid, or (b) if given by personal delivery, when delivered.

15.    <u>Binding Agreement</u>.  This Guaranty shall be binding on and inure to the benefit of the Guarantor and the Lender and their respective successors and assigns, except that the Guarantor shall have no right to assign any interest under this Guaranty without the prior written consent of the Lender.  The Lender may from time to time assign its interest under this Guaranty in whole or in part without notice to or the consent of the Guarantor.

16.    <u>Multiple Guarantors</u>.  If more than one Person signs this Guaranty as Guarantor, (a) the term "Guarantor" shall mean each such Person, (b) the obligations of each Guarantor shall be joint, several and independent, and (c) this Guaranty shall be construed and enforced as though each Guarantor executed a separate guaranty on the terms set forth in this Guaranty.

17.    <u>Governing Law</u>.  This Guaranty shall be governed by, and construed and enforced in accordance with, the Laws of California.

7

18.    Time of Essence. Time is of the essence of each and every provision of this Guaranty.

19.    Nature of Waivers. THE GUARANTOR HEREBY ACKNOWLEDGES THAT (A) THE GUARANTOR HAS CONSULTED WITH LEGAL COUNSEL TO UNDERSTAND THE FULL IMPACT OF THE WAIVERS MADE BY THE GUARANTOR PURSUANT TO THIS GUARANTY, INCLUDING THOSE SET FORTH IN §§ 2, 3, 4, 5, 6 AND 20 HEREOF, (B) THE GUARANTOR UNDERSTANDS THE FULL IMPACT OF SUCH WAIVERS, AND (C) SUCH WAIVERS HAVE BEEN KNOWINGLY AND WILLINGLY MADE BY THE GUARANTOR.

20.    Waiver of Jury Trial. EACH OF THE LENDER AND THE GUARANTOR WAIVE TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING (INCLUDING COUNTERCLAIMS), WHETHER AT LAW OR EQUITY, BROUGHT BY THE LENDER OR THE GUARANTOR AGAINST THE OTHER ON MATTERS ARISING OUT OF OR IN ANY WAY RELATED TO OR CONNECTED WITH THIS GUARANTY, THE OTHER LOAN DOCUMENTS, THE LOAN OR ANY TRANSACTION CONTEMPLATED BY, OR THE RELATIONSHIP BETWEEN THE LENDER AND THE GUARANTOR OR ANY OTHER LOAN PARTY OR ANY ACTION OR INACTION BY ANY PARTY UNDER, ANY OF THE LOAN DOCUMENTS.

21.    Minimum Liquidity. Guarantor, combined with Borrower shall maintain Liquid Assets for the 4th quarter of 2006 of not less than Two Million Dollars ($2,000,000.00). Verification of Liquid Assets of Guarantor for the 1st quarter of 2007 shall be waived. Guarantor (Combined) shall maintain Liquid Assets of not less than Five Million Dollars ($5,000,000.00) within 45 days of the end of each calendar quarter commencing the 2nd quarter of 2007 and each quarter thereafter. Bank statements shall be required. Liquid Assets shall mean cash or readily marketable publicly traded securities traded or nationally recognized public exchange or the availability of an unsecured line of credit from an institutional lender; without the necessity of drawing on such line.

22.    Maximum Debt to Worth. Guarantor, combined with Borrower shall maintain Maximum Debt to worth ratio not exceeding 2.5 to 1.00, measured at the end of each calendar year for Guarantor (Combined) and certified by Borrower. For purposes of this section, the maximum debt to worth ratio shall be calculated by adding together total liabilities, minority partner's interest and including contingent liabilities divided by market equity. As used in this Section "Debt" shall be defined as direct liabilities plus the outstanding balances of contingent liabilities.

**(Signatures on Next Page)**

8

"GUARANTOR":

J. P. ELIOPULOS ENTERPRISES, INC.
a California corporation

By: _____
        Andrew J. Eliopulos, President

_____
Andrew J. Eliopulos, an individual

_____
Georgia Eliopulos, an individual

Guarantor's Address:

42225 – 10th Street West, Suite 101
Lancaster, CA  93534

2837 Petro Place
Lancaster, CA  93536

2717 Stillmeadow Lane
Lancaster, CA  93536

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "E"**

**Default Letter**

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page ___45___
Exhibit ___1___





## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA  90017

tel  +1-213-629-2020
fax  +1-213-612-2499
www.ORRICK.COM

January 10, 2008

Jeffery D. Hermann
(213) 612-2413
jhermann@orrick.com

**VIA EMAIL, OVERNIGHT COURIER AND U.S. MAIL**

Mr. Andrew J. Eliopulos, President
Joshua Ranch Development, Inc.
P.O. Box 5237
42225 – 10th Street West, Suite 101
Lancaster, California, 93534
andrew@jpeliopulos.com

Re:    IndyMac Bank; Joshua Ranch Development, Inc.

Dear Mr. Eliopulos:

Reference is hereby made to that certain loan made by IndyMac Bank, F.S.B. ("Lender") to Joshua Ranch Development, Inc. a California corporation ("Borrower") on or about December 6, 2005, for the purpose of the acquisition of approximately 793.62 acres of developable land situated within the County of Los Angeles, California (the "Project") and the development of the Project into approximately 183 single family home lots and other improvements (the "A&D Loan") pursuant to the terms of and evidenced by the following documents:

that certain Building Loan Agreement (Land Development), dated as of December 6, 2005, as amended, restated, supplemented, or otherwise modified from time to time (the "A&D Building Loan Agreement"), by and among Lender and Borrower; that certain General Guaranty (Real Estate Secured Loan) dated as of December 6, 2005 (the "A&D Guaranty"), made by J. P. Eliopulos Enterprises, Inc., a California corporation, Andrew J. Eliopulos, an individual and Georgia Eliopulos, an individual, as guarantors ("Guarantors") in favor of Lender; that certain Promissory Note in the principal amount of $36,571,000.00 dated as of December 6, 2005, made by Borrower in favor of Lender (the "A&D Promissory Note"); and that certain Construction Deed of Trust With Assignment of Rents, Security Agreement and Fixture Filing dated as of December 6, 2005, by and among Borrower as trustor, Lender as beneficiary and Lawyers Title Company as trustee, and recorded in the official records of the Recorder's Office of Los Angeles County, California on December 29, 2005, as document 05 3210582 (the "A&D Deed of Trust"); those series of letter agreements amending the

OHS West:260364015.2
JDH

Page __46__
Exhibit __I__



**ORRICK**

January 10, 2008
Page 2

terms of the Building Loan Agreement and the other Loan Documents(collectively, the "Letter Agreements"), consisting of that certain Letter Agreement dated as of December 27, 2005 ("Letter Agreement"), that certain First Letter Agreement dated as of Marcy 14, 2006 ("First Letter Agreement"), that certain Second Letter Agreement dated as of January 2, 2007 ("Second Letter Agreement"), that certain Third Letter Agreement dated as of June 27, 2007 ("Third Letter Agreement"), that certain Fourth Letter Agreement dated as of September 5, 2007 ("Fourth Letter Agreement"), and that certain Fifth Letter Agreement dated as of November 6, 2007 ("Fifth Letter Agreement"); and the other agreements and documents executed and delivered in connection with the A&D Loan (collectively with the A&D Building Loan Agreement, the A&D Guaranty, the A&D Promissory Note, the A&D Deed of Trust and the Letter Agreements, hereinafter referred to as the "A&D Loan Documents"):

Reference is further made to that loan made by Lender to Borrower on or about January 2, 2007, for the purpose of the construction of twenty residential housing units, three model units and certain other improvements on land situated within the City of Palmdale, County of Los Angeles, California (the "Palmdale Project")  pursuant to the terms of and evidenced by the following documents (the "Construction Loan"):

that certain Building Loan Agreement (Residential Tract Construction), dated as of January 2, 2007, as amended, restated, supplemented, or otherwise modified from time to time (the "Construction Building Loan Agreement"), by and among Lender and Borrower;  that certain General Guaranty (Real Estate Secured Loan) dated as of January 2, 2007 (the "Construction Guaranty"), made by Guarantors in favor of Lender;  that certain Promissory Note in the principal amount of $14,533,000.00 dated as of January 2, 2007, made by Borrower in favor of Lender (the "Construction Promissory Note"); and that certain Construction Deed of Trust With Assignment of Rents, Security Agreement and Fixture Filing dated as of January 2, 2007, by and among Borrower as trustor, Lender as beneficiary and Fidelity National Title Company as trustee, and recorded with the county Recorder for Los Angeles, California on February 7, 2007, as document 20070266110 (the "Construction Deed of Trust");  that certain Cross Default/Cross Collateralization Cross Pay Agreement dated as of January 2, 2007, between Borrower and Lender and recorded with the county Recorder for Los Angeles, California on February 7, 2007, as document 20070266112 (the "Cross Default Agreement "); and the other agreements and documents executed and delivered in connection with the Construction Loan

Page___47_____
Exhibit___1_____



**O R R I C K**

January 10, 2008
Page 3

(collectively with the Construction Building Loan Agreement, the Construction Guaranty, the Construction Promissory Note, the Construction Deed of Trust and the Cross Default Agreement, hereinafter referred to as the "Construction Loan Documents"). Capitalized terms used herein shall have the meanings set forth in the respective A&D Loan Documents or the Construction Loan Documents, unless otherwise noted.

Pursuant to the terms of the Fifth Letter Agreement, the Maturity Date of the A&D Loan was extended to January 1, 2008. As stated in the Fifth Letter Agreement and consistent with the other A&D Loan Documents: "All sums owing on the Loan shall be due and payable no later than this extended maturity date." Borrower has failed to repay the amounts owing on the A&D Loan at or prior to the Maturity Date thereof, and as a result, Events of Default occurred on January 2, 2008, under sections 6.01 (a) and (b) of the A&D Building Loan Agreement and the related A&D Loan Documents.

Pursuant to Section 2 (b) of the Cross Default Agreement, "Any breach or default under the Loan Documents for Loan No. 2 [the A&D Loan] shall constitute a default under the Loan Documents for Loan No. 1 [the Construction Loan]." Thus, the above Events of Default existing under the A&D Loan Documents constitute Events of Default under the Construction Loan Documents.

Under paragraph (e) of Exhibit B to the Construction Building Loan Agreement (entitled "Disbursement Schedule"), "Lender shall not be obligated to make any Disbursement . . . if (A) the Lender has determined that an Event of Default has occurred or than an event which, with notice or the passage of time or both, would be an Event of Default has occurred . . ."

Lender hereby provides Borrower with notice of Lender's intention, effective immediately, to discontinue making any further Disbursements on the Construction Loan.

Lender is still considering its response to the occurrence of the above Events of Default. No delay on the part of Lender in exercising any rights or remedies should be construed as a waiver of any such rights or remedies and Lender hereby expressly reserves all of its rights to exercise any right, power or remedy provided to it under the A&D Loan Documents and the Construction Loan Documents, or by law, either by suit in equity or by action at law, or both, without further notice, in its sole and absolute discretion.

Lender: (a) has not waived, is not by this letter waiving, and has no intention of waiving, the defaults and Events of Default specified herein, any other defaults or any other Events of Default that may be continuing on the date hereof or any Event of Default that may occur after the date hereof; and (b) has not agreed to forbear with respect to any of its respective rights or remedies concerning any of the defaults and Events of Default specified herein or any other defaults or Events of Default

OHS West:260364015.2
JDH

Page __48__
Exhibit __1__



**ORRICK**

January 10, 2008
Page 4

that may have occurred or are continuing as of the date hereof or that may occur after the date hereof. Please call John Terwilliger at 619/209-6030 or Geoffrey Ramirez at 949/923-4114 if you have any questions or comments regarding this matter.

Sincerely,

ORRICK, HERRINGTON & SUTCLIFFE LLP

Jeffrey D. Hermann

cc:

VIA EMAIL, OVERNIGHT COURIER AND U.S. MAIL

J. P. Eliopulos Enterprises, Inc.
42225 – 10th Street West, Suite 101
Lancaster, California 93534
richard@jpeliopulos.com
andrew@jpeliopulos.com

Gloria Roberts
United Commercial Bank
199 S. Los Robles Avenue,
Suite 780
Pasadena, CA 91101
groberts@unitedcb.com

VIA EMAIL, OVERNIGHT COURIER AND U.S. MAIL

Andrew J. Eliopulos
2837 Petro Place
Lancaster, California 93536
andrew@jpeliopulos.com

John R. Terwilliger, V.P. Lending Officer
IndyMac Bank F.S.B.
8880 Rio San Diego Drive, 8th floor
San Diego, CA 92108
John.terwilliger@imb.com

VIA OVERNIGHT COURIER AND U.S. MAIL

Georgia Eliopulos
2717 Stillmeadow Lane
Lancaster, California 93536

Geoffrey S. Ramirez, Vice President
IndyMac Bank, F.S.B.
1 Banting
Irvine, CA 92618
Geoffrey.Ramirez@imb.com

OHS West:260364015.2
JDH

Page 49
Exhibit 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "F"**

**Acceleration and Demand Letter**

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page___50___

Exhibit___1___






**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA 90017

*tel* +1-213-629-2020
*fax* +1-213-612-2499

WWW.ORRICK.COM

February 26, 2008

Jeffery D. Hermann
(213) 612-2413
jhermann@orrick.com

**VIA EMAIL, OVERNIGHT COURIER AND U.S. MAIL**

Mr. Andrew J. Eliopulos, President
Joshua Ranch Development, Inc.
P.O. Box 5237
42225 – 10th Street West, Suite 101
Lancaster, California, 93534
andrew@jpeliopulos.com

Andrew J. Eliopulos
2837 Petro Place
Lancaster, California  93536
andrew@jpeliopulos.com

J. P. Eliopulos Enterprises, Inc.
42225 – 10th Street West, Suite 101
Lancaster, California  93534
richard@jpeliopulos.com
andrew@jpeliopulos.com

Georgia Eliopulos
2717 Stillmeadow Lane
Lancaster, California  93536
(Overnight Courier & US Mail only)

Re:    IndyMac Bank; Joshua Ranch Development, Inc.

Dear Mr. Eliopulos and Ms. Eliopulos:

Reference is hereby made to our January 10th correspondence to you (the "Demand Letter") on behalf of our client IndyMac Bank, F.S.B. ("Lender") in connection with two loans made by Lender to Joshua Ranch Development, Inc. a California corporation ("Borrower"). The first loan in the original committed principal amount of $36,571,000 was made to Borrower by Lender on or about December 6, 2005 (the "A&D Loan"). The second loan in the original committed principal amount of $14,533,000 was made to Borrower by Lender or about January 2, 2007 (the "Construction Loan").

Reference is further made to the documents executed and delivered in connection with the A&D Loan and defined in the Default Letter (the "A&D Loan Documents") and the documents executed and delivered in connection with the Construction Loan and defined in the Default Letter (the "Construction Loan Documents").

The A&D Loan matured on January 1, 2008, and all amounts owing by Borrower in connection with the A&D Loan were fully due and payable on January 2, 2008.

Page ___51___
Exhibit ___1___



**ORRICK**

Mr. Andrew J. Eliopulos, President
Joshua Ranch Development, Inc.
Andrew J. Eliopulos
J.P. Eliopulos Enterprises, Inc.
Georgia Eliopulos
Page 2

In addition to the Events of Default described in the Default Letter, additional Events of Default have occurred and are continuing under the Construction Loan Documents in that Borrower failed to pay the interest for December, 2007, due January 1, 2008, and delinquent on January 20, 2008, and failed to pay the interest for January, 2008, due February 1, 2008, and delinquent on February 20, 2008. Such failures constitute payment Events of Default under Section 6.01(b) of the Building Loan Agreement for the Construction Loan.

As a result of the Events of Default set forth above and the Events of Default set forth in the Default Letter, Lender hereby accelerates the Maturity Date of the Construction Loan such that all amounts of principal, interest, fees and other charges and expenses owing by Borrower under the Construction Loan Documents are now immediately due and payable.

Enclosed herewith is a Payoff Demand Letter for each of the A&D Loan and the Construction Loan dated and calculated as of February 11, 2008, which sets forth certain, but not all, of the amounts so owing by Borrower (additional amounts consist of counsel fees, appraisal expenses, default interest and the like). This letter shall be controlling with respect to any inconsistent statements or discrepancies between the statements made in the Payoff Demand Letters and this letter.

**Lender hereby makes demand upon Borrower for immediate payment to Lender of all amounts owing under the A&D Promissory Note and the Construction Promissory Note and owing under the other A&D Loan Documents and the Construction Loan Documents.**

Under the terms of the A&D Guaranty and the Construction Guaranty, the Guarantors absolutely and unconditionally guarantied the punctual and complete payment of all amounts owing by Borrower under the Promissory Note and the other Loan Documents for each loan.

**Lender hereby makes demand upon Guarantors for immediate payment to Lender of all such amounts owing by Borrower under the A&D Promissory Note and the Construction Promissory Note and owing under the other A&D Loan Documents and the Construction Loan Documents.**

Lender further notifies Borrower that, under the terms of the Promissory Notes for the A&D Loan and the Construction Loan, interest began accruing at the Alternate Rate after the occurrence of an Event of Default and continues to accrue at the Alternate Rate.

Lender is still considering its response to the occurrence of the above Events of Default. No delay on the part of Lender in exercising any rights or remedies should be construed as a waiver of any

OHS West:260391195.1
14743-48 JDH

Page _____52_____
Exhibit _____1_____



ORRICK

Mr. Andrew J. Eliopulos, President
Joshua Ranch Development, Inc.
Andrew J. Eliopulos
J.P. Eliopulos Enterprises, Inc.
Georgia Eliopulos
Page 3

such rights or remedies and Lender hereby expressly reserves all of its rights to exercise any right, power or remedy provided to it under the A&D Loan Documents and the Construction Loan Documents, or by law, either by suit in equity or by action at law, or both, without further notice, in its sole and absolute discretion.

Lender: (a) has not waived, is not by this letter waiving, and has no intention of waiving, the defaults and Events of Default specified herein, any other defaults or any other Events of Default that may be continuing on the date hereof or any Event of Default that may occur after the date hereof; and (b) has not agreed to forbear with respect to any of its respective rights or remedies concerning any of the defaults and Events of Default specified herein or any other defaults or Events of Default that may have occurred or are continuing as of the date hereof or that may occur after the date hereof.

Please contact John Terwilliger at 619-209-6030 or Geoffrey Ramirez at 949-923-4114 if you have any questions or comments regarding this matter.

Sincerely,

ORRICK, HERRINGTON & SUTCLIFFE LLP

James D. Hermann

cc:

John R. Terwilliger, V.P. Lending Officer
IndyMac Bank F.S.B.
8880 Rio San Diego Drive, 8th floor
San Diego, CA 92108
John.terwilliger@imb.com

Geoffrey S. Ramirez, Vice President
IndyMac Bank, F.S.B.
1 Banting
Irvine, CA 92618
Geoffrey.Ramirez@imb.com

Gloria Roberts
United Commercial Bank
Suite 780
199 S. Los Robles Avenue
Pasadena, CA 91101
groberts@unitedcb.com

OHS West:260391195.1
14743-48 JD11

Page    53
Exhibit    1



555 Lake Avenue .Ste. [51] [?] Pasadena, California  91101          Telephone: (800) 668-2300 Ext. 5678     Fax: (626) 577-3332

## FULL LOAN PAYOFF DEMAND LETTER

Geoffrey Ramirez
1 Harding
Irvine, CA 92518

CC: Todd Camp

DATE: February 11, 2008
LOAN #: 53-0980001
BORROWER: JOSHUA RANCH DEV. :
ESCROW #: N/A

Pursuant to your Request for Demand, we are pleased to supply the following information:

| | |
|---|---|
| PRINCIPAL | $ 3,909,292.35 |
| INTEREST DUE (From 12/01/2007 TO 02/11/2008) | $ 68,412.61 + 13,302.52  2/11/08 - 2/18/08 |
| LATE FEES | $ 1,472.77 |
| APPRAISAL FEE | $ 4,000.00 |
| DEMAND FEE | |
| UCC TERMINATION FEE | $ 25.00 |
| RECONVEYANCE FEE | $ 20.00 |
| | $ 45.00 |

TOTAL AMOUNT DUE                                    $ 3,983,267.73

Subtotal: $3,983,267.73 plus interest per Diem of $950.1752 @ 8.7500% from 02/11/2008 to date funds are received. A Late Charge of 5% will be assessed on unpaid interest if payment is not received by the twentieth (20ᵗʰ) calendar day. Per Diem is subject to change if the Bank of America Reference Rate/Wall Street Journal Prime should change. We have the right to amend any demand statement. Please contact our office for an updated payoff prior to closing at (800) 669-2300 Ext. 5334

UPON PAYMENT IN FULL A FULL RECONVEYANCE WILL BE FORWARDED TO YOUR OFFICE FOR RECORDATION.  PLEASE NOTE THAT INDYMAC BANK, HOMEBUILDER DIVISION WILL NOT BE RESPONSIBLE FOR ANY PROCESSING AND/OR RECORDING FEES FOR THIS TRANSACTION.

IMPORTANT:  PLEASE NOTE THAT ADDITIONAL MONIES AND/OR DOCUMENTATION MAY BE REQUIRED, IF ANY SET ASIDE LETTER(S) OR LETTERS OF CREDIT HAVE BEEN ISSUED IN CONNECTION WITH THE SUBJECT LOAN. IT IS IMPERATIVE THAT YOU CONTACT THIS OFFICE PRIOR TO FULL PAYOFF OF THIS LOAN TO CONFIRM ADDITIONAL REQUIREMENTS IF ANY.  THIS LOAN WILL MATURE ON JANUARY 2, 2009.

WIRE PAYOFF FUNDS TO:

INDYMAC BANK, F.S.B.
888 E. WALNUT AVENUE
PASADENA, CA 91101
ACCOUNT NAME: HBD PAYOFF ACCOUNT
ROUTING NUMBER: 322270288
ACCOUNT NUMBER: #5-27122-200000
REFERENCE: CODE X25QPCI
LOAN NUMBER: 53-0980001
BORROWER NAME: JOSHUA RANCH DEVELOPMENT.

Funds must be immediately available and must be received by 1:00 p.m. Pacific Time to receive a same day credit. We are to be at no expense in connection with this transaction and reserve the right to amend our demand at any time.

PREPARED BY: _____
                        Aurora Dichoso, Sr. Loan Administrator

APPROVED BY: _____
                        Alisa Ashikyan, Vice President/Manager

53-0980001  HBD  DEMAND LETTER 02-12-08.doc.esc                                    02/12/2008

Page   54
Exhibit   1

 



155 N. Lake Avenue U6-11-19, Pasadena, California 91101          Telephone: (800) 669-2300 Ext. 5576    Fax: (626) 577-3332

## FULL LOAN PAYOFF DEMAND LETTER AT DEFAULT RATE

Geoffrey Ramirez                                    DATE: February 11, 2008
1 Banting                                           LOAN #: 52-8680001
Irvine, CA 92618                                    BORROWER: JOSHUA RANCH DEV. . .
                                                    ESCROW #: N/A

CC: Todd Camp

Pursuant to your Request for Demand, we are pleased to supply the following information:

| | | |
|---|---|---|
| PRINCIPAL | $ | 23,521,586.67 |
| INTEREST DUE (From 12/01/2007 TO 01/01/2008) | $ | 159,268.60 |
| INTEREST DUE (From 01/01/2008 TO 02/11/2008) Default Rate | $ | 284,738.84 → 96,046.44 |
| LATE FEES | $ | 7,963.43 |
| APPRAISAL FEE | $ | 6,000.00 |
| DEMAND FEE | $ | 25.00 |
| RECONVEYANCE FEE | $ | 45.00 |
| SET-ASIDE LETTER 10075 | $ | 1,476,350.78 |
| SET-ASIDE LETTER 10085S | $ | 160,000.00 |
| | | |
| TOTAL AMOUNT DUE | $ | 25,815,978.32 |

Subtotal:  $25,815,978.32 plus interest per Diem of $6,860.46 @ 10.500% (Alternate Rate)  from 02/11/2008 to date funds are received. A Late Charge of 5% will be assessed on unpaid interest if payment is not received by the twentieth (20th) calendar day.  Per Diem is subject to change if the Bank of America Reference Rate/Wall Street Journal Prime should change.  We have the right to amend any demand statement. Please contact our office for an updated payoff prior to closing at (800) 669-2300 Ext. 5334

UPON PAYMENT IN FULL A FULL RECONVEYANCE WILL BE FORWARDED TO YOUR OFFICE FOR RECORDATION.   PLEASE NOTE THAT INDYMAC BANK, HOMEBUILDER DIVISION WILL NOT BE RESPONSIBLE FOR ANY PROCESSING AND/OR RECORDING FEES FOR THIS TRANSACTION.

IMPORTANT:  PLEASE NOTE THAT ADDITIONAL MONIES AND/OR DOCUMENTATION MAY BE REQUIRED. IF ANY SET ASIDE LETTER(S) OR LETTERS OF CREDIT HAVE BEEN ISSUED IN CONNECTION WITH THE SUBJECT LOAN. IT IS IMPERATIVE THAT YOU CONTACT THIS OFFICE PRIOR TO FULL PAYOFF OF THIS LOAN TO CONFIRM ADDITIONAL REQUIREMENTS IF ANY.  THIS LOAN MATURED JANUARY 1, 2008.

WIRE PAYOFF FUNDS TO:

        INDYMAC BANK, F.S.B.
        888 E. WALNUT AVENUE
        PASADENA, CA 91101
        ACCOUNT NAME: HBD PAYOFF ACCOUNT
        ROUTING NUMBER: 322270285
        ACCOUNT NUMBER: 85-27122-200000
        REFERENCE: CODE X25QPCI
        LOAN NUMBER: 52-8680001
        BORROWER NAME: JOSHUA RANCH DEVELOPMENT.

Funds must be immediately available and must be received by 1:00 p.m. Pacific Time to receive a sameday credit. We are to be at no expense in connection with this transaction and reserve the right to amend our demand at any time.

PREPARED BY: _____
             Aurora Dichosa, Sr. Loan Administrator

APPROVED BY: _____
             Alisa Ashikyan, Vice President/ Manager

52-8680001 - HBD DEMAND LETTER  02-12-08 .tct .doc                    02/12/2008

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit "G"**

**Notice of Default – A&D Loan**

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page ___56___
Exhibit ___/___

 

**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO**

**CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA  92408**

---

Space above this line for reorder's use only

Trustee Sale No. 1062-40   Loan No. 53-0980000   Title Order No.

## IMPORTANT NOTICE
### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $4,032,508.14 in principal, interest and certain, but not all, fees and expenses incurred by beneficiary, as of 03/18/2008 and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise;**

1

Page  57
Exhibit  1





Trustee Sale No. 1062-40

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: INDYMAC BANK, F.S.B., ATTN: GEOFFREY S. RAMIREZ, V.P., 1 BANTING, IRVINE, CA 92618, PHONE: (949) 923-4114 OR INDYMAC BANK, F.S.B., ATTN: JOHN R. TERWILLIGER, V.P. LENDING OFFICER, 8880 RIO SAN DIEGO DRIVE, 8TH FLOOR, SAN DIEGO, CA 92108, PHONE: (619) 209-6030

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: CHICAGO TITLE COMPANY, a California corporation is either the original trustee, or the duly appointed Trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 01/02/2007, executed by JOSHUA RANCH DEVELOPMENT, INC. a California corporation, as trustor, to secure obligations in favor of INDYMAC BANK, F.S.B., as Beneficiary recorded on 02/07/2007 as Document No. 20070266110 of official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust, including the note(s) and any modifications/ amendments thereto for the original committed amount of $14,533,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE UNPAID PRINCIPAL BALANCE OF $3,909,292.35 DUE AND PAYABLE 02/23/08 TOGETHER WITH INTEREST, DEFAULT INTEREST, LATE CHARGES, AND ADDITIONAL FEES AND EXPENSES INCURRED BY LENDER, DUE THEREON. TO CURE THE DEFAULT, YOU MUST PAY ALL SUMS DUE, INCLUDING THE PRINCIPAL BALANCE, INTEREST THEREON AND ANY ADDITIONAL UNPAID AMOUNTS THAT YOU ARE OBLIGATED TO PAY BY THE TERMS OF THE NOTE AND DEED OF TRUST, SUCH AS, BUT NOT LIMITED TO, ADVANCES, TAXES, HAZARD INSURANCE, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES, PLUS TRUSTEE'S AND/OR ATTORNEY'S FEES AND COSTS AND EXPENSES INCURRED IN ENFORCING THE OBLIGATION.   Pursuant to California Commercial Code Section 9604(a)(1)(B), the sale may, at the election of the beneficiary, include personal property.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the

2

Page ___58___
Exhibit ___1___

Trustee Sale No. 1062-40

obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: __3/27/08__

INDYMAC BANK, F.S.B.

By:
Name:
Title:

3

Page __59__
Exhibit __1__

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit "H"**

**Notice of Default – Construction Loan**

OHS West:260404578.3
14743-48 JDH

VERIFIED COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES

Page ___60___

Exhibit ___1___

RECORDING REQUESTED BY


AND WHEN RECORDED MAIL TO

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA 92408

---

Trustee Sale No. 1061-40   Loan No. 52-8680000   Title Order No.     *Space above this line for recorder's use only*

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$26,095,631.34** in principal, interest and certain, but not all, fees and expenses incurred by beneficiary as of **03/18/2008** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise;

Page ___61___
Exhibit ___1___

Trustee Sale No. 1061-40

or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:  INDYMAC BANK, F.S.B., ATTN:  GEOFFREY S. RAMIREZ, V.P., 1 BANTING, IRVINE, CA  92618, PHONE:  (949) 923-4114 OR INDYMAC BANK, F.S.B., ATTN:  JOHN R. TERWILLIGER, V.P. LENDING OFFICER, 8880 RIO SAN DIEGO DRIVE, 8TH FLOOR, SAN DIEGO, CA  92108, PHONE:  (619) 209-6030

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CHICAGO TITLE COMPANY, a California corporation is either the original trustee, or the duly appointed Trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 12/06/2005, executed by JOSHUA RANCH DEVELOPMENT, INC., a California corporation, as trustor, to secure obligations in favor of INDYMAC BANK, F.S.B., as Beneficiary recorded on 12/29/2005 as Document No. 05 3210582 of official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust, including the note(s) and any modifications/amendments thereto for the original committed amount of $36,571,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE UNPAID PRINCIPAL BALANCE OF $23,521,586.67 DUE AND PAYABLE 01/01/2008 TOGETHER WITH INTEREST, DEFAULT INTEREST, LATE CHARGES, AND ADDITIONAL FEES AND EXPENSES INCURRED BY LENDER, DUE THEREON. TO CURE THE DEFAULT, YOU MUST PAY ALL SUMS DUE, INCLUDING THE PRINCIPAL BALANCE, INTEREST THEREON AND ANY ADDITIONAL UNPAID AMOUNTS THAT YOU ARE OBLIGATED TO PAY BY THE TERMS OF THE NOTE AND DEED OF TRUST, SUCH AS, BUT NOT LIMITED TO, ADVANCES, TAXES, HAZARD INSURANCE, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES, PLUS TRUSTEE'S AND/OR ATTORNEY'S FEES AND COSTS AND EXPENSES INCURRED IN ENFORCING THE OBLIGATION.  Pursuant to California Commercial Code Section 9604(a)(1)(B), the sale may, at the election of the beneficiary, include personal property.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the

2

Page  62

Exhibit  1

Trustee Sale No. 1061-40

obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE:  3/27/08

INDYMAC BANK, F.S.B.

By: _____

Name: _____

Title: _____

3

Page ___63___

Exhibit ___I___

**EXHIBIT 2**



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Jeffery D. Hermann, State Bar Bar No. 90445
Orrick, Herrington & Sutcliffe LLP
777 S. Figueroa Street, Suite 3200

TELEPHONE NO: 213-629-2020          FAX NO: 213-612-2499
ATTORNEY FOR (Name): IndyMac Bank, F.S.B., a Federally Chartered Sav

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 300 East Walnut Street
MAILING ADDRESS: Pasadena
CITY AND ZIP CODE: CA 91101
BRANCH NAME: Northeast

**ORIGINAL FILED**

APR 01 2008

**LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT**

CASE NAME:
IndyMac Bank, F.S.B. v. J.P. Eliopulos Enterprises, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | GC040588<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [✓] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): Two - Breach of Guaranty
5. This case [ ] is   [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 31, 2008
Jeffery D. Hermann
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | Page 1 of 2 |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |


COPY

| SHORT TITLE: | CASE NUMBER |
|---|---|
| IndyMac Bank, F.S.B. v. J.P. Eliopulos Enterprises, et al | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES    CLASS ACTION? ☐ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 3    ☐ HOURS/ ☑ DAYS

**Item II.** Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br><br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4.<br>1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4.<br>1., 2., 4.<br><br>1., 2., 3.<br>1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

Page _65_
Exhibit _2_

| | SHORT TITLE<br>IndyMac Bank, F.S.B. v. J.P. Eliopulos Enterprises, et al | | CASE NUMBER | |
|---|---|---|---|---|

| | **A**<br>Civil Case Cover<br>Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6006  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☑ A6012  Other Promissory Note/Collections Case | 2., (6.) |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation    Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

Page ___66___
Exhibit ___2___

SHORT TITLE:
IndyMac Bank, F.S.B. v. J.P. Eliopulos Enterprises, et al

CASE NUMBER

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| Other Judicial Review<br>(39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Partnership Corporation<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

Judicial Review (Cont'd.)
Provisionally Complex Litigation
Enforcement of Judgment
Miscellaneous Civil Complaints
Miscellaneous Civil Petitions

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

Page ___67___
Exhibit ___2___

| SHORT TITLE | CASE NUMBER |
|---|---|
| IndyMac Bank, F.S.B. v. J.P. Eliopulos Enterprises, et al | |

**Item III.** *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: 155 North Lake Avenue |
|---|---|
| ☐1. ☐2. ☐3. ☐4. ☒5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: Pasadenda | STATE: CA | ZIP CODE: 91101 | |
|---|---|---|---|

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Pasadena courthouse in the Northeast District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq. and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: April 1, 2008

(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

Page 68
Exhibit 2

# EXHIBIT 3